**MASSENA LAW P.C.**
305 Broadway, Suite 1001
New York, New York 10007
(P) 212-766-1700 ♦ (F) 212-766-1701
Email: AVM@Massenalaw.com

* Admitted in Federal and
  New York State Courts

August 25, 2025

**VIA ECF**
Hon. Loretta A. Preska
United States District Court Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Cedric Kenyon Christopher, Jr.*, et al., 22-cr-435-LAP-3**

Dear Judge Preska,

Defendant Cedric Christopher, Jr., by and through undersigned counsel, respectfully submits this sentencing memorandum and requests that this Honorable Court sentence Mr. Christopher to time served with a three-year period of supervised release.

## I. INTRODUCTION

Twenty-six-year-old Cedric Christopher stands before this Court at a crossroads, not as a career criminal who chose a life of lawlessness, but as a first-time offender whose momentary lapse in judgment has forever altered his trajectory and that of his young family. His story demonstrates that his involvement in this conspiracy was an aberration, not the beginning of a criminal career.

Mr. Christopher has fully accepted responsibility for his actions by pleading guilty to conspiracy to commit firearms trafficking. See Final Presentence Report ("PSR") ¶ 1. What distinguishes him from typical defendants is the genuine transformation that has occurred in his life since his arrest. Today, he stands as the sole caretaker to two very young children: his two-year-old son and his infant daughter, born in February 2025, whose daily care, emotional development, and financial security depend entirely upon his presence.

Mr. Christopher's role as principal guardian became critical when his children's mother secured employment in early 2025. This created a delicate family ecosystem where his $3,800 monthly income as a commercial truck driver provides financial stability while his daily availability enables their mother to work. The family's self-sufficiency hangs in the balance, and with it, the developmental welfare of two children in their most crucial formative years.

1

His complete lack of criminal history, exemplary conduct throughout these proceedings, and evolution into a devoted father present a compelling case for community-based rehabilitation rather than institutional incarceration. Where co-defendants treated firearms trafficking systematically, Mr. Christopher's involvement was limited in both scope and duration, a critical distinction that the evidence supports and justice demands this Court recognize.

## II. BACKGROUND AND OFFENSE CONDUCT

## A. The Charges and Guidelines Framework

Mr. Christopher's plea to conspiracy to commit firearms trafficking carries a Guidelines range of 18-24 months based on an offense level of 15 and a Criminal History Category of I. PSR ¶¶ 77, 22. Despite Mr. Christopher's purchase of seventeen firearms, the Government acknowledges it can prove trafficking of only six, a significant fact that demonstrates the peripheral nature of his involvement. PSR ¶ 22.

This prosecutorial concession reflects the fundamental difference between Mr. Christopher's participation and the systematic operations conducted by his co-defendants. Where others treated firearms trafficking as a business venture, Mr. Christopher's involvement was constrained and brief.

## B. A Peripheral Player in a Broader Conspiracy

Mr. Christopher occupied the outer edges of this conspiracy, not its center. The Government characterized Marquise Austin as personally responsible for purchasing 49 firearms and trafficking at least 35 of them between December 2020 and November 2021. Gov't Sentencing Letter, Austin, ECF No. 209, at 1. Mr. Christopher's six provable trafficking transactions represent less than one-sixth of Austin's transactions, a disparity warranting a significant downward variance.

Unlike Austin, who continued activities after law enforcement intervention, Mr. Christopher ceased his involvement upon understanding the gravity of his actions. This demonstrates the difference between someone who viewed trafficking as a profitable enterprise and someone whose brief involvement represented poor judgment rather than criminal commitment.

## III. ARGUMENT FOR TIME SERVED

## A. Employment Stability and Career Investment

Mr. Christopher's steady employment reflects rehabilitation already achieved rather than merely hoped for. His career progression demonstrates a commitment to providing for his family through legitimate means. He transitioned from Sysco Food Distributors, where he earned $26 per hour, to his current role at Roberts Trash Hauling, consistently maintaining skilled positions requiring reliability and responsibility.

His Class A commercial driver's license represents a significant personal investment in legitimate career development. PSR ¶ 64. Obtaining this license required substantial time, effort, and financial commitment, demonstrating dedication to building marketable skills for lawful employment. This investment contradicts any suggestion that he views criminal activity as viable.

Most telling is his employer's continued confidence throughout these proceedings. Despite knowing about the charges, Roberts Trash Hauling maintained his employment, providing powerful evidence that those who know Mr. Christopher best believe in his character and rehabilitation.

## B. Personal Character and Complete Rehabilitation

At twenty-six years old, Mr. Christopher brings a criminal history lacking any meaningful prior involvement with the criminal justice system. PSR ¶ 22 (reflecting Criminal History Category I). This clean record demonstrates that his involvement in this conspiracy represented a significant departure from his character, not insight into his true nature.

This absence of prior criminal behavior becomes more significant when viewed alongside his acceptance of responsibility. Unlike defendants who must be proven guilty through lengthy proceedings, Mr. Christopher acknowledged his mistake, accepted the consequences, and began rehabilitation before the resolution of his case. Such genuine accountability from a first-time offender demonstrates that the criminal justice experience itself provided a powerful deterrent effect.

His family support system reinforces prospects for continued lawful behavior. His parents remain actively involved, providing emotional support and practical assistance. This network of accountability, combined with his responsibilities as a father, creates incentives for lawful conduct extending far beyond what additional incarceration could achieve. (See Exhibit A – Letters of Support)

## C. The Essential Role of Fatherhood

The most compelling aspect of Mr. Christopher's transformation lies in his evolution from someone who made poor choices to a devoted father whose children depend on him for daily welfare. This represents a fundamental shift in priorities, making him the primary custodian for their two children in critical developmental stages.

Mr. Christopher's two-year-old son is in a crucial stage of language acquisition and emotional bonding, which child development experts consider essential for lifelong learning and security. Meanwhile, his infant daughter, who was born in February 2025, is developing primary attachment relationships that will influence her sense of trust and safety throughout her life. Given these important developments, Mr. Christopher's ongoing presence is vital for the healthy growth of his children.

The family's current stability relies on a delicate balance that would be severely disrupted by extended incarceration. Mr. Christopher's monthly income provides the financial foundation

3

that supports his family, while his availability for childcare allows their mother to keep her job. This arrangement ensures that the family remains self-sufficient and productive, benefiting both justice and broader social interests.

Disrupting this balance would lead to a series of negative consequences. His children would lose their primary guardian during crucial developmental phases. Their mother might have to choose between work and childcare, which could push the family toward relying on government assistance. The stable environment that supports the children's growth would be replaced by uncertainty and economic stress.

## D. Achieving Deterrence Through Time Served

The criminal justice process has profoundly impacted Mr. Christopher, transforming his priorities and decision-making in ways that further incarceration cannot improve. His daily responsibilities as an active and engaged father have created strong incentives for lawful behavior that will continue long after any prison sentence ends. Additionally, the restrictions resulting from this conviction will serve as ongoing reminders of the consequences of his actions.

During the course of this matter, Mr. Christopher has shown immediate and consistent behavior changes, as evidenced by his full compliance with the conditions of his pretrial release. He has maintained steady employment, and his commitment to his family indicates that the deterrent effect has been effective from the very beginning.

General deterrence is achieved through Mr. Christopher's conviction, which sends a clear message that firearms trafficking carries serious federal consequences, including a felony conviction with lifelong repercussions. This serves the purpose of deterring others without requiring the separation of a rehabilitated defendant from his young children.

## E. Public Safety Through Community Integration

Public safety is best served by Mr. Christopher's continued integration into his community as a working father, rather than by his removal from family and employment, which anchor him to lawful behavior. Mr. Christopher poses a minimal risk of recidivism because his life circumstances create strong incentives for him to continue behaving lawfully. His responsibility for his children's welfare, steady employment, and complete lack of prior criminal involvement all indicate a likelihood of future compliance with the law.

Moreover, Mr. Christopher's continued community integration serves broader public safety interests. His steady employment contributes to the legitimate economy while his role as principal caretaker helps ensure his children receive a stable upbringing, which in turn helps prevent future criminal involvement. These positive community contributions represent ongoing restitution benefiting society more than his removal to federal custody.

## F. The § 3553(a) Factors Support Time Served

When Congress directed courts to consider factors outlined in 18 U.S.C. § 3553(a), it envisioned individualized sentencing accounting for both the nature of the offense and the offender characteristics. Mr. Christopher's case presents a compelling example of how these factors support a sentence significantly below the Guidelines range.

The nature and circumstances of his offense, while serious, must be viewed in the context of his limited role and brief involvement. His trafficking of six firearms, while inexcusable, pales compared to the systematic operations of co-defendants who treated trafficking as a profitable enterprise. His immediate cessation upon understanding the gravity of his conduct demonstrates the difference between someone who made poor choices, and someone committed to criminal activity.

Mr. Christopher's history and characteristics strongly favor community-based rehabilitation over institutional incarceration. His complete lack of criminal history, transformation into a devoted father, steady employment, and strong family support system suggest he is ideally suited for continued community supervision rather than removal from circumstances that anchor him in lawful behavior.

The need for a sentence to reflect offense seriousness must be balanced against recognition that Mr. Christopher's conviction itself, with lifelong collateral consequences, already accomplishes this goal. Restrictions on firearms ownership, employment limitations, and social stigma attached to his felony conviction will serve as permanent reminders of the gravity of his conduct.

## G. Avoiding Unwarranted Sentencing Disparities

The need to avoid unwarranted disparities among defendants supports recognizing substantial differences between Mr. Christopher's peripheral involvement and the more extensive roles played by co-defendants.

The Government described Austin as purchasing 49 firearms and trafficking at least 35, with conduct resulting in 18 firearms recovered across three states and shell casings showing three Bronx-recovered firearms used in seven shootings. Gov't Sentencing Letter, Austin, ECF No. 209, at 1. Austin's 30-37 month Guidelines range reflects extensive systematic participation, a role Mr. Christopher never approached.

The Government's comparison reveals a clear culpability hierarchy. While Austin purchased 49 firearms, "co-defendant Cedric Christopher purchased 17 firearms and sold at least five of them." Gov't Sentencing Letter, Austin, ECF No. 209, at 8. This prosecutorial recognition of different culpability levels supports a sentence reflecting Mr. Christopher's minimal role relative to co-defendants. Time served would appropriately account for these differences while acknowledging the seriousness of firearms trafficking.

## H. The Court's Opportunity for Individualized Justice

5

The Probation Office recommended an 18-month sentence, noting "a significant imprisonment term is warranted" given the nature of the offense. PSR at 22-23. However, Probation's recommendation acknowledges this represents "advisory guidelines range low-end," recognizing mitigation exists in Mr. Christopher's case.

This Court can recognize that the goals of sentencing have already been achieved through Mr. Christopher's conviction and collateral consequences. The lifelong restrictions and stigma attached to his felony conviction ensure he will never forget the gravity of his actions. Deterrence has been accomplished through his transformation into a devoted father whose daily responsibilities create powerful lawful behavior incentives.

## IV. CONCLUSION

Mr. Christopher comes before this Court seeking not to minimize his wrongdoing, but to demonstrate he has learned from it, changed because of it, and committed himself to ensuring it never happens again. His case presents the Court with an opportunity to impose a sentence that achieves all traditional sentencing goals while recognizing unique circumstances, making incarceration unnecessary and counterproductive.

Mr. Christopher's conspiracy involvement was limited and brief. Where co-defendants purchased dozens of firearms and continued trafficking despite explicit warnings, his role was confined to six provable transactions he ceased upon understanding their gravity. Where others treated trafficking as a profitable enterprise, his involvement appears to be a product of poor judgment rather than criminal commitment. Mr. Christopher has undergone a genuine transformation since his arrest. He evolved from someone who made regrettable choices into a devoted father whose two young children depend on him for daily care, emotional support, and financial stability. His two-year-old son and infant daughter are in critical developmental stages where his continued presence is essential to healthy growth and emotional security.

The delicate family ecosystem developed around Mr. Christopher's rehabilitation would be devastated by incarceration. His steady employment provides a financial foundation supporting his family, while his childcare availability enables their mother to work. This arrangement keeps the family self-sufficient, productive, and stable outcomes serving both justice and broader social interests. Time served with supervised release would recognize punishment already achieved through Mr. Christopher's conviction and lifelong collateral consequences. Deterrence has been accomplished through transformation into a responsible father whose daily obligations create powerful, lawful behavior incentives. Public safety is better served by his continued integration as a working father and productive community member than removal to federal custody.

This Court can demonstrate that the criminal justice system can be both firm in condemning criminal conduct and wise in recognizing human capacity for redemption. Mr. Christopher's case presents exactly the type of unique circumstances justifying individualized sentencing based on factors distinguishing him from both typical defendants and co-defendants.

Defense respectfully requests that this Court impose a sentence of time served with a three-year supervised release term, allowing Mr. Christopher to continue rehabilitation in the community

6

where he can best serve both justice and his family. Such a sentence would acknowledge the seriousness of his offense while recognizing that sentencing goals have been achieved through his conviction, transformation, and commitment to ensuring his children never witness their father make such choices again.


Respectfully submitted,
*ALAIN V. MASSENA*
Alain V. Massena

**EXHIBIT A**

**Table of Contents - Letters of Support**

1. Britoni Jones - Family Friend (11-year relationship)
2. Dejha Wilkins - Personal Friend (10-year relationship)
3. Jade Akins - Mother of Children
4. Kendra Cooley - Community Member
5. Larry Moore & Ray Moore - Grandparents
6. Morgan Scoggins - Personal Friend (7-year relationship)
7. Ryan Abrams - Family Friend

## Letter 1: Britoni Jones

1601 North Shackleford Road
Little Rock, AR
July 16, 2025

**Letter of Support for Cedric Christopher**

Dear Judge Preska,

I am writing on behalf of my friend, Cedric Christopher. I understand the magnitude of the situation before you and would never attempt to minimize what has occurred. My hope is to provide deeper understanding of Cedric, because the man I know is not defined by this moment.

Cedric is an exceptional father deeply involved in his children's lives. His love for his children is unmatched. You can observe how he lights up when he sees them or discusses them. Cedric constantly makes sacrifices to provide them with better lives. His children rely on him not just for support, but for stability, guidance, and love. Separating him from them would be devastating in ways I cannot fully express.

I have known Cedric for eleven years, and this is someone who has always worked diligently. He consistently shows up for others—friends and family—without asking anything in return. Whether helping someone move, fixing a car, offering transportation, or providing emotional support, Cedric was always available. He assisted me when I lacked transportation to attend school. Rather than allowing me to become overwhelmed to the point of abandoning my education, he provided daily transportation until I graduated. Few people would make such sacrifices for a friend.

He provided support when my friends and I needed emotional assistance during difficult periods. He's like a brother to me, and it pains me to write this letter because the man I know is not what you might think based on this case. He's a good person who deserves a second opportunity. What happened does not define who he is. It's a mistake—one he regrets deeply and accepts full responsibility for. I've witnessed the toll it's taken on him. He is remorseful, frightened, and most importantly, determined to make things right.

Your Honor, I respectfully request your compassion. He is a good man who made a poor decision, not someone bad by nature. If given the opportunity, I know without doubt that Cedric will learn from this, grow from it, and continue being the father, friend, and community member we are proud to know.

Thank you for your time in reading this.

With sincere respect,
Britoni Jones

**Letter 2: Dejha Wilkins**

**Letter of Support for Cedric Christopher**

Dear Judge Preska,

I'm writing on behalf of my friend, Cedric Christopher. This isn't easy to write, but I believe it's important to share what I know about the man behind the choice he made.

I've known Cedric for over ten years. I understand his heart, his intentions, and the kind of father he is. Cedric consistently appears for the people he loves. He's the type of father whose entire face lights up when discussing his children. Even during difficult times, he's done everything possible to remain present and involved.

Yes, he made a serious mistake. I'm not here to excuse that. But I want to be clear: that one decision does not define who Cedric is. Since that time, I've watched him transform his life. He's become father to two beautiful children—a two-year-old and an infant—and earned his CDL to provide for them. That's not the path of someone avoiding responsibility; that's someone fighting to build a better future.

Cedric was never the child getting into trouble. He was actually a dancer growing up—play music and he thought he was Michael Jackson. That's the Cedric I know: playful, lighthearted, and full of potential. He made a poor decision, like many of us have in our younger years, but he's never been someone who acts with cruelty or disregard.

He's expressed to me how deeply he regrets what he did, not just because of legal consequences, but because of how it's affected his loved ones, especially his family. I know with all my heart that if given the chance, Cedric will continue what he's already started: becoming a better man, father, and example.

Your Honor, I understand that justice must be served. But I also hope you'll consider the complete picture of who Cedric is, the growth he's shown, the family depending on him, and the community of people who believe in his ability to turn this around.

Thank you for your time in reading this.

Sincerely,
Dejha Wilkins

**Letter 3: Jade Akins (Mother of Children)**

**Letter of Support for Cedric Christopher Jr.**

Dear Judge Preska,

I am writing with deep respect regarding the upcoming sentencing of Cedric Christopher Jr., the father of my children. I understand the seriousness of his situation, and I do not intend to excuse any actions that brought him before your court. However, I kindly ask you to consider the complete picture of the man I know as a father and person.

Cedric has always been an important part of our lives and our biggest supporter. Despite challenges he has faced, he has made every effort to be present, supportive, and loving. We have a two-year-old son and an infant daughter born in February 2025, and I know his absence from them is punishment in itself.

I ask from the bottom of my heart that you please consider leniency in his sentencing. I am not asking you to disregard justice, but to temper it with compassion. A lenient sentence would allow him the opportunity to rebuild his life and be the father our children still need.

Thank you for your time and for considering my plea.

Respectfully,
Jade Akins

## Letter 4: Kendra Cooley

**Letter of Support for Cedric Christopher**

Dear Judge Preska,

Cedric is a kind, humble, and compassionate man. He is a devoted father to two beautiful children—an infant and a two-year-old. He is known to be someone who would give you his last dollar or the clothes off his back. He is always willing to help anyone at any time, which is why he is loved and admired by many people regardless of their relationship to him.

Cedric's spirit is pure and vibrant. When he enters a room, it can go from dim to bright within seconds. He makes everyone smile with the energy he brings. His children need him more than anything or anyone in this world. Cedric's presence means a great deal to everyone around him. He has so much love to give and so much potential to continue doing good in his community.

I ask that you see past his mistakes and see him for the man he truly is. Please give Cedric the opportunity to continue being the father, friend, brother, son, and neighbor who lifts others up every day.

Sincerely,
Kendra Cooley

**Letter 5: Larry Moore and Ray Moore (Grandparents)**

**Letter of Support for Cedric Christopher Jr.**

Dear Judge Preska,

This letter concerns my grandson Cedric Christopher Jr. I have known Cedric—we call him CJ—for his entire life. CJ has always been a very disciplined child from his early years. I never knew him to be in any trouble either at home or in school. He was and remains quiet in nature and respectful to others.

He and his brother visited us often when we lived in Little Rock and would often spend the night. There were never any issues of any kind. We later moved to Virginia in 1998, and CJ and his brother would often visit us for the summer and stay until school started. We took them to church with us, and they seemed to enjoy it. They attended the boys club here in Virginia and got along well with other young people.

He was never known as a problem child or one who sought trouble. I have never known him to act out of character, both as a child and as a young man. He seems very intelligent and focused. He has expressed to me his desire to start his own business and do something meaningful with his life. He seems to have his priorities straight and has great love for his family.

I pray he will be given the opportunity to live out his dreams and be a positive role model for his children. He is like many young people—and even ourselves—in that we all have made errors in judgment and did not make good decisions in life. But if we could do it all over, we would do it differently if given the chance.

I love my grandson and am very proud of him. His grandmother would also be writing this letter, but unfortunately she passed earlier this year.

Thank you,
Larry Moore
Ray Moore

13

## Letter 6: Morgan Scoggins

**Letter of Support for Cedric Christopher**

Dear Judge Preska,

My name is Morgan Scoggins, and I'm writing on behalf of my dear friend Cedric Christopher. I've had the privilege of knowing Cedric since 2018, and in that time, he has become more than just a friend—he's like a brother to me.

Cedric has always had a big heart, and anyone who knows him closely can see the good in him beyond any current circumstances. He is the kind of person who appears for people without being asked. Whether it was a phone call when I was down, a ride when I had none, or simply being a solid presence during hard times, Cedric has always been dependable. He has never judged me, and he's always offered his support with honesty, laughter, and love. That's a rare kind of person.

People are more than their worst choices. Cedric has made mistakes, but I've also seen the parts of him that reflect growth, loyalty, and an ability to care deeply for people in his life. He's shown remorse, and I believe in his potential to not only learn from this but to become a better man on the other side of it.

I hope this letter serves as a window into the kind of person Cedric truly is. He is loved, respected, and valued by many, and I will continue to stand by him as he faces this difficult chapter. Everyone deserves the chance to be seen fully, not just in their lowest moments but also in the light of who they've been and who they still have the power to become.

With sincerity and hope,
Morgan Scoggins

14

## Letter 7: Ryan Abrams

**Letter of Support for Cedric Christopher**

Dear Judge Preska,

My name is Ryan Abrams, and I am writing to speak on behalf of my brother, Cedric Christopher. I understand he is currently facing a difficult situation, and I want to provide insight into the man he truly is—a dedicated father, a hard worker, and someone who has always tried to do right by his family.

Cedric is the father of two young children—a son and a daughter—and they are the center of his life. He works incredibly hard to provide for them, often waking as early as 3 a.m. and sometimes not finishing his day until 10 at night. What's most remarkable is that even with that demanding schedule, he's still fully present for his children. He's there for daily care, meals, and bedtime. He doesn't take the easy way out. He sacrifices sleep, comfort, and personal time because he knows his children are counting on him.

He made a mistake—something he openly acknowledges. But that one mistake does not reflect the kind of man he is. Cedric is not someone who runs from responsibility. In fact, he carries more than most, and he does it without complaint. His actions are rooted in love and responsibility, and he works every day to be a steady, positive force in his children's lives.

Your Honor, I respectfully ask that you take into consideration the full person—not just this moment of misjudgment, but the years of hard work, dedication, and love that define him. He is someone who is trying to do the right thing and be the best father he can be.

Thank you for your time and consideration.

Respectfully,
Ryan Abrams

15