

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

September 3, 2025

**BY ECF AND EMAIL**

The Honorable Loretta A. Preska
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re: *United States v. Cedric Keyon Christopher*, 22 Cr. 435 (LAP)**

Dear Judge Preska:

The Government respectfully submits this letter in advance of the September 8, 2025 sentencing of the defendant Cedric Keyon Christopher on his conviction for conspiracy to commit firearms trafficking. For the reasons set forth below, the Government respectfully submits that a sentence of 18 months, within the applicable range of 18 to 24 months' imprisonment calculated under the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), would be sufficient but not greater than necessary to achieve the purposes of sentencing.

**I. Offense Conduct**

From at least about December 2020 through August 2021, Christopher and other straw purchasers, all Arkansas residents, bought firearms from numerous gun shops in Arkansas and provided them to co-defendant Aboudulaye Keita, who in turn transferred the firearms to New York City for sale. New York City Police Department (NYPD) reports show that, to date, at least 12 of the conspirators' firearms have been recovered in the Bronx and Brooklyn. Lead information collected and maintained by the National Integrated Ballistic Information Network also shows that casings from five of these 12 firearms were recovered after the firearms' use in at least 12 shootings. Reports from police departments in Arkansas and California show that additional firearms were recovered in and around Little Rock, San Jose, and Santa Cruz, among other cities.

Christopher purchased a total of at least 17 firearms. *See* Presentence Investigation Report ("PSR") ¶ 20. To date, three of the firearms have been recovered from the Bronx—a Weihrauch Hermann Windicator and two Taurus G3Cs. In addition, two firearms have been recovered from Arkansas—a SIG Sauer MCX and Sarsilmaz SAR 9. PSR ¶ 20. Online payment records show that Christopher received payments for his firearms. On January 15, 2021, the day after Christopher purchased three firearms, Keita's relative sent Christopher a payment of $1,200 through an electronic platform as apparent payment for multiple firearms. PSR ¶ 21. Additionally, on

February 26, 2021, the same day Christopher purchased three firearms, Keita sent Christopher a payment of $400 through CashApp as apparent payment for at least one firearm.

## II. Christopher's Guilty Plea and Applicable Guidelines Range

### A. The Plea Agreement

On July 16, 2022, Christopher was arrested in Arkansas on a two-count Indictment charging him with conspiracy to engage in gun trafficking, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), and one count of substantive gun trafficking. On April 3, 2025, Christopher pleaded guilty to the charged conspiracy, pursuant to a plea agreement (the "Plea Agreement") PSR ¶ 6. The Plea Agreement between the parties stipulated to application of the 2021 Guidelines Manual pursuant to § 1B1.11(b)(1) and (2), because use of the Guidelines Manual in effect on the date that the defendant would be sentenced would result in a higher offense level than the Guidelines Manual in effect at the time the offense was committed. PSR ¶ 4 n.1.

The parties further stipulated to the following:

- a base offense level of 12, pursuant to § 2K2.1(a)(7),
- a two-level enhancement for engaging in an offense involving between three and seven firearms, pursuant to § 2K2.1(b)(l)(A),
- a four-level enhancement for engaging in the trafficking of firearms, pursuant to § 2K2.1(b)(5),
- a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a), and
- a further one-point reduction for timely notice of the defendant's intention to enter a plea of guilty, for which the Government would move at sentencing, pursuant to § 3E1.1(a).

PSR ¶ 7. This calculation resulted in an offense level of 15. PSR ¶ 4(h).

The parties agreed that Christopher has zero criminal history points, and that Christopher's criminal history category is I. PSR ¶ 7. The resulting Guidelines range (the "Stipulated Guidelines Range") is 18 to 24 months' imprisonment, and the fine range is $7,500 to $75,000. PSR ¶ 7.

Christopher also admitted the forfeiture allegation with respect to Count 1 of the Indictment and agreed to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), all right, title and interest in five firearms: (i) one Taurus G3C pistol, serial number ABN323411, (ii) one Taurus G3C pistol, serial number ACA452018, (iii) one Weihrauch Windicator revolver, serial number 1574498, (iv) one Glock 21 pistol, serial number BCKS441, and (v) one Sarsilmaz SAR 9 pistol, serial number T1102-21BV50455. PSR ¶ 7.

### B.  Probation's Report and Recommendation

Probation's Guidelines calculation matches that contained in the Plea Agreement. PSR ¶ 78. Probation recommends a Guidelines sentence of 18 months' imprisonment, followed by three years' supervised release. PSR at 22.

The defendant has been on bail since his arrest in 2022.

## III. Discussion

### A.  Applicable Law

The Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. The Guidelines are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United*

*States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### B.  The Court Should Impose a Guidelines Sentence.

The Government respectfully submits that Probation's recommended sentence of 18 months, at the bottom of the applicable Guidelines range, would be sufficient, but not greater than necessary, to reflect the nature and seriousness of the offense; to account for the history and characteristics of the defendant; to promote respect for the law; to provide just punishment for the offense; and to afford adequate deterrence to criminal conduct, as required by 18 U.S.C. § 3553(a).

The most important factor for purposes of this defendant's sentencing is the seriousness of the defendant's offense conduct, as measured by the dangers it created for the community, the number of firearms the defendant purchased and trafficked, and the length of time during which he engaged in this conduct.

First, Christopher conspired to, and did, repeatedly buy firearms for Keita—the gun runner who was responsible for systematically seeking out straw purchasers and transporting their firearms to New York City. Christopher was also in regular contact with other members of the conspiracy, as evidenced by toll records and text messages—most notably Keita and straw purchaser Marquise Austin. The dangers of the group's conduct, and the risks it posed to the safety and wellbeing of others, should have been obvious to Christopher.

Second, Christopher purchased no fewer than 17 firearms over the course of more than a year, between December 2019 and April 2021. He purchased as many as three guns at a time—all cheap handguns that were clearly intended for resale, not for hunting, collection, self-defense, or some other legitimate purpose. His first known purchase, a Glock 21, was recovered in Arkansas, as was his last purchase, a Sarsilmaz SAR 9. In between, he purchased numerous firearms, three of which were recovered in the Bronx in March, April, and August 2021, six months apart. Nonetheless, Christopher continued purchasing firearms.

The timing of Christopher's transfers further confirms that he purchased the firearms for the purpose of resale. From the iCloud account of one of Keita's New York-based associates, the investigation recovered a video that was taken on March 20, 2021, one day after one of Keita's bus trips from Memphis to New York City, depicting six guns (screenshot below). The serial numbers could not be determined from the video, but five of the guns matched the make and model of five guns that Christopher purchased in multiple-purchase transactions in the weeks before the video was captured.



Specifically, two of the pictured firearms match firearms that Christopher purchased on February 26, 2021—a Springfield Armory XD-9 labeled (1) above and a Taurus G3C labeled (5) above. An additional three of the pictured firearms match firearms that Christopher purchased on March 4, 2021—two Weihrauch Hermann Windicators labeled (2) and (3) above and a Taurus M85 labeled (4) above.

In light of Christopher's repeat conduct—the illegal and repeated purchase and sale of firearms for profit—a Guidelines sentence is needed to promote respect for the law, provide just punishment, and afford adequate deterrence in this case. Christopher arranged for the purchase of dangerous weapons that he then passed off, illegally, without any apparent concern for how they would be used and by whom. His conduct in facilitating an Arkansas-to-New York gun pipeline is egregious, and a Guidelines sentence is needed to deter the defendant from re-engaging in illegal firearms activity when he rejoins the community on his release.

A Guidelines sentence is also needed to promote respect for the law and provide adequate general deterrence. Every state has its own firearms laws and the ability to calibrate the stringency of its laws regarding firearm possession. But what is universal across states is federal prohibitions on dealing firearms without a license. These prohibitions are crucial to ensuring that firearms are not freely passed to prohibited persons who would use them to threaten and harm others, including violent criminals, domestic abusers, and felons. These prohibitions are also key to ensuring that

unlicensed traffickers do not simply evade the firearms laws that apply in densely populated cities such as New York City. A Guidelines sentence is needed to make clear the seriousness of the crime of firearms trafficking, to anyone who might consider trafficking guns across state lines, without regard for how their conduct endangers the public.

The Government recognizes that Christopher has no criminal history and that he is less culpable than either of his co-defendants Keita or Austin, who were sentenced to 37 months and 24 months, respectively. Christopher did not play the central role that Keita played in coordinating straw purchases, transporting firearms, and selling the firearms across state lines, and as the defense notes in its written submission, Christopher did not buy or traffic nearly as many firearms as Austin. These distinctions are largely captured in Christopher's lower Guidelines range, and the Government submits that an 18-month sentence would account for Christopher's lesser, yet nonetheless serious, conduct.

## C. Conclusion

For the reasons set forth above, the Government believes a Guidelines sentence would be sufficient but not greater than necessary in this case.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: __/s/_____
     Jane Y. Chong
     Assistant United States Attorney
     (212) 637-2263

Cc: Alain Massena, Esq.